## SELSOR-BADLEY v. REED et al.

No. 12704—Opinion Filed Feb. 12, 1924.

1. Deeds — Effect of Quitclaim Deed — After Acquired Title.

A quitclaim deed made in compliance with the statute conveys whatever title the grantor has at the time of its execution and delivery, but, in the absence of some covenant of future assurance, does not convey a subsequently acquired title.

2. Indians—Purchase at Public Sale of Lands—Title Acquired by Final Payment.

A purchaser at public sale of unallotted lands of the Choctaw and Chickasaw tribes of Indians did not, by the purchase and payment of the initial payment, acquire title, either legal or equitable, and did not acquire the equitable title until final payment of the purchase price.

3. Same—Innocent Purchaser—Effect of Quitclaim Deed Made Before Final Payment.

T., after purchase at such sale and before making the deferred payments, conveyed to C. by quitclaim deed without covenant of future assurance. C. died about 3 years thereafter without having placed the quitclaim deed of record. After the death of C. patent was issued to T., which was recorded in the office of the county clerk of the county where the land was situated. More than two years after the patent to T. was recorded, the heirs of C. caused the quitclaim deed to C. to be filed for record and conveyed the land to R. Held, R. acquired neither the legal nor equitable title, and was not an innocent purchaser without notice.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Coal County: J. H. Linebaugh, Judge.

Action by Bernice Selsor-Badley against Marvin Reed and Laura L. Cornelius. Judgment for defendants, and plaintiff appeals. Reversed.

Frederick King and T. G. Cutlip, for plaintiff in error.

George Trice and Denver N. Davison, for defendants in error.

Opinion by RAY, C. This is a suit by Bernice Selsor-Badley, nee Bernice Selsor, to quiet title. The defendant Reed asserted ownership and title was quieted in him. Mrs. Cornelius' interest was that of mortgagee of Reed. They claim through W. J. Thompson as a common source of title. There appears to be no important conflict of evidence. The facts are these: John A. Selsor, father of Bernice Selsor, a minor, desiring to secure title to 10 acres of unallotted land to square out Bernice's allotment, entered into an oral agreement with W. J. Thompson by which Thompson agreed to buy the land at public sale and deed it to Bernice when she came of age. Thompson bid the land in and Selsor furnished the money for the initial payment. Thereafter Thompson, because of ill health, was preparing to leave the state and W. F. Cornelius, a long time tenant on the allotment of Bernice, proposed to Thompson that if he would deed the land to him he would make the deferred payments for the rental of the land and deed it to Bernice when she came of age. Cornelius and Thompson took the matter up with Selsor and he agreed to it. Pursuant to that agreement Thompson conveyed to Cornelius by quitclaim deed. About the time of this conveyance to Cornelius, Selsor died. Cornelius took possession of the land and made the deferred payments as they came due. April 1, 1917, Cornelius died without having placed the deed of record. After his death the quitclaim deed was placed of record, and on February 4, 1920, the heirs of Cornelius conveyed to Marvin Reed. Upon learning that the heirs of Cornelius had conveyed to Reed, Thompson executed a warranty deed to Bernice Selsor. Reed had no actual knowledge of the trust agreement. Thompson was the only witness to testify as to the agreements, Selsor and Cornelius both being dead. It is contended that Thompson's testimony was inadmissible under section 558, Comp. Stat. 1921. We cannot agree with this contention. Thompson is not a party to the suit. But if, under the statute, Thompson was not a competent witness, it cannot be considered here for the reason that the objection urged went to the admissibility of the testimony and not to the competency of the witness. Williams et al. v. Joins et al., 34 Okla. 733, 126 Pac. 1013.

Plaintiff contends that the initial payment and the receipt of the disbursing agent given therefor vested no estate in Thompson other than in trust: that the quitclaim deed vested no estate in Cornelius and that the quitclaim deed, together with the other circumstances, imported notice, and therefore Reed was not a purchaser for value in good faith without notice. On the other hand, it is contended that if a trust agreement existed, it was a secret trust and that Reed was an innocent purchaser for value and without notice. We think it must be held that the defendants had notice, either actual or constructive, of these facts; that at the time of the execution of the quitclaim deed the legal title was in the Choctaw and Chickasaw tribes of Indians; that the only estate that Thompson held was whatever was vested in him by the initial payment and the receipt therefor; that the unallotted land deed to Thompson executed by the Principal Chief of the Choctaw Nation and Governor of the Chickasaw Nation was filed for record December 7, 1917, and recorded in book 17, page 285.

The question is, What title, if any, was vested in Reed? In Tucker v. Leonard et al., 76 Okla. 16, 183 Pac. 907, it was said:

"A quitclaim deed made in compliance with sec. 1161, Rev. Laws 1910, is an effectual in conveying the title of the grantor as is a warranty deed, and one can be a bona fide purchaser under the former as under the latter, the distinction being that in a quitclaim deed, the words 'and warrant the title to the same' are omitted." 

While a quitclaim deed, without covenant of future assurance, conveys all the title of the grantor at the time of its delivery, it does not convey an after-acquired title. Brewster on Conveyancing, par. 188; 18 C. J. par. 299; 8 R. C. L. 113.

In Ward v. Ward, 74 Oklahoma, 182 Pac. 675, it was held:

"The title to unallotted lands of the Choctaw and Chickasaw Nations is in the respective Indian Tribes or Nations, and is divested by the issuance and delivery of patents under rules and regulations prescribed by the Secretary of the Interior."

In the sale of these lands under the direction of the Secretary of the Interior, if the purchaser failed to make payment within the time prescribed by the rules and regulations, the land reverted to the Indian Tribes and was sold as other surplus lands. Bledsoe's Indian Land Laws, 478.

Thompson, at the time he conveyed to Cornelius by quitclaim deed, had acquired title neither legal nor equitable. By the purchase and initial payment he had acquired the right to make the deferred payments, but

if he failed to meet them, the land reverted. When these deferred payments were made and there was nothing further for him to do, he had then an equitable title which he could convey by quitclaim and which would give his grantee the right to acquire the legal title. But the equitable title was acquired subsequent to the quitclaim deed to Cornelius and was not conveyed by the quitclaim deed. That subsequently acquired title was conveyed to Bernice Badley by warranty deed December 8, 1920. Whether such a trust was created by the agreement between Selsor and Thompson and the subsequent acts of the parties as could be enforced by Bernice Selsor-Badley after reaching her majority is not here for consideration for the conveyance to her by Thompson after he had acquired the legal and equitable title was a final execution of that trust if it be held that no title was conveyed to Cornelius by the quitclaim deed. Having reached the conclusion that Thompson's title, both legal and equitable, was acquired after the quitclaim deed to Cornelius, we think Cornelius acquired no title and those claiming through him acquired no title either legal or equitable. We also think the facts were sufficient to put a reasonably prudent man on inquiry. Cornelius had never placed the quitclaim deed on record in his lifetime but it was placed of record nearly three years after his death and more than two years after the patent to Thompson had been placed of record, and six years after its execution and delivery to Cornelius. There had been no administration of Cornelius' estate.

We think that Reed acquired no title, either legal or equitable, the mortgage to Mrs. Cornelius does not constitute a lien upon the land, and the judgment should be reversed, with directions to set aside the judgment and enter judgment quieting title in the plaintiff, Bernice Selsor-Badley.

By the Court: It is so ordered.