**COLCLAZIER, Adm'r, et al. v. SIMPSON.**

No. 14019—Opinion Filed Oct. 14, 1924.

1. **Eminent Domain — Condemnation for Railroad Right of Way—Ejectment by One with After Acquired Title.**

Where a railroad company institutes condemnation proceedings for a right of way over Indian lands under the Enid & Anadarko Act of February 28, 1902, and complies substantially with the provisions of that act and goes into possession of the land so condemned, builds its main line, side tracks, station buildings etc., ejectment will not lie against said railroad company by a person with an after acquired title.

2. **Same—Appropriation of Land as Equivalent to Condemnation — Estoppel of Landowner.**

Where a public service corporation, vested with the power of eminent domain. enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by and permits such corporation to go on and spend large sums of money in constructing its railroad, or telegraph wires, or pipe lines, or mains, or plants, or other necessary fixtures, the owner is estopped from maintaining either trespass or ejectment, and will be regarded as having acquiesced therein, and is restricted to a suit for damages for the value of the land, on the theory that the public has acquired an interest in the appropriation. Under such circumstances an appropriation will be treated as equivalent to title by condemnation.

3. **Same—Payment for Right of Way— Rights of Landowner and His Vendee.**

Where a railroad company enters upon the land of another and constructs a railroad thereover, under a statute entitling it to do so on condition that compensation be made to the owner, and the latter permits the construction and operation of the railroad without compliance with that condition, a subsequent vendee of the owner takes the land subject to the burden of the right of way, and the right to exact payment therefor from the railroad company belongs to the owner at the time of entry and construction.

(Syllabus by Maxey, C.)

Commissioners' Opinion. Division No. 1.

Error from Superior Court, Okmulgee County; H. R. Christopher, Judge.

Action by Nathaniel N. Simpson against Cressie Colclazier, administratrix of the estate of J. W. Colclazier, deceased, et al. There was judgment for plaintiff, and defendants appeal. Reversed.

This case was submitted and tried by the court below on an agreed statement of facts, which is as follows:

"It is hereby stipulated by and between the parties to this cause, acting by and through their respective attorneys, that said cause shall be submitted to the court for final determination and judgment upon the following agreed statement of facts:

"(1) That the real estate involved in this action was originally a part of the public domain of the Creek Nation.

"(2) That about the year 1901, under the orders of the Department of the Interior of the United States, the town of Henryetta, Okla., then Indian Territory, was laid out and platted, and the lots, parts of which are in controversy in this case, were included within the exterior limits of said town of Henryetta.

"(3) That afterwards, in the year 1902 the lots, parts of which are involved in this action, were sold under the orders of the Secretary of the Interior, lots 2 and 3 being sold to one James J. Clark, and lot 4 being sold to Missouri A. Davis, the same being made under the provisions of what is known as the Original Creek Treaty.

"(4) That subsequently, 25 per cent. of the purchase price of said lots was paid by the respective purchasers, and no further payments were ever made on said purchase price by anyone, and the said lots were thereafter declared forfeited by the Secretary of the Interior, on the _____ day of _____, 19___.

"(5) That afterwards, under the orders of the Secretary of the Interior, there was a resale of said lots, and they were purchased by the plaintiff, Nathaniel N. Simpson, a copy of the deed issued and delivered to the said Nathaniel N. Simpson is hereto attached, made a part hereof. and marked exhibit 'A'.

"(6) That prior to the execution of the deed above referred to as exhibit 'A', and to wit, on the _____ day of _____ 1905, the Missouri, Oklahoma & Gulf Railway Company, a corporation, organized under the laws of the Territory of Oklahoma, filed in the United States Court for the Western District of Indian Territory, at Muskogee, a petition for the condemnation of certain lands within the Creek Nation, including the lots involved in this suit. Said condemnation proceedings were instituted under the provisions by the Act of Congress approved February 28, 1902, and known as the Enid and Anadarko Act, and the lands sought to be condemned were required as a right of way for the said Missouri, Oklahoma & Gulf Railway Company, and said lands were included and described in a plat of the proposed right of way, copies of which were filed with the Secretary of the Interior, with the Principal Chief of the Creek Nation, and with the United States

Indian Agency for the Indian Territory, all as required by said Enid and Anadarko Act. Upon the filing of said petition, referees were appointed by said court to assess the value of the right of way sought to be condemned, who thereupon entered upon the discharge of their duties and in accordance with the provision of said act. Certified copies of the record of said condemnation proceedings, including notice of condemnation and assessment of damages, report of referees, and confirmatory order of the court are hereto attached, made parts hereof, and marked exhibits 'B' and 'D', respectively.

"(7) Pending said condemnation proceedings, the said Missouri A. Davis and James J. Clark, above mentioned, executed deeds to the said Missouri, Oklahoma & Gulf Railway Company covering the lots involved in this suit; copies of which are hereto attached, marked exhibits 'E' and 'F', respectively, and made parts of this agreed statement of facts.

"(8) Upon the filing of the report of the referee in said condemnation proceedings, the said Missouri, Oklahoma & Gulf Railway Company entered into possession of the lots involved in this suit. and constructed thereon its main line track together with the necessary side tracks, and also constructed on said lots a depot and passenger station, and continued to occupy said depot and station grounds, and to maintain said tracks until the appointment of receivers, as hereinafter set forth.

"(9) Subsequent to the construction of said tracks and depot, and on or about the _____ day of _____ 1909, the said Missouri, Oklahoma & Gulf Railway Company executed a right of way lease, upon the portion of lots 2 3 and 4 in block 40E, described in plaintiff's petition, to one Ross, which said lease provided that the said lessee might enter upon said leased premises and erect thereon an elevator and other buildings for the purpose of conducting and carrying on a mill and elevator business, the said lessee to pay rental for the use of the ground so occupied at the rate of $10 per year. The buildings and other improvements constructed by the lessee were to be and remain his property and might be removed by him upon the expiration or termination of said lease. Said lease further providing that same might be terminated by the railway company upon giving to the lessee 30 days' notice of its intention to terminate the same.

"Pursuant to said lease, said lessee entered into possession of said premises, constructed thereon a mill and elevator building. The lease was subsequently assigned by the said Ross with the consent of the railway company to the defendant, J. W. Colclazier, and no notice has ever been given to either the said lessee, or his assign, for the termination of said lease: since the date of said assignment, and for more than six years prior to the commencement of this suit, the defendant, J. W. Colclazier, has continued in possession of the portions of the lots described in the petition herein, and was so in possession at the time suit was brought.

"(10) On the 12th day of December, 1913, a suit was filed in the United States District Court for the Eastern District of Oklahoma, praying for the appointment of receivers for the said Missouri, Oklahoma & Gulf Railway Company, and said receivers were by the court appointed, and thereupon took over all the real estate, roadbed, right of way, stations, buildings, tracks and all other property of the said Missouri, Oklahoma & Gulf Railway Company. Said receivers continued to operate said railroad until the _____ day of _____, 1919, on which said date all of the properties of the said Missouri, Oklahoma & Gulf Railway Company, of whatsoever character or description, were exposed for sale at public auction, under the order and decree of said court, and at said sale, the defendant Kansas, Oklahoma & Gulf Railway Company became the purchaser of all of said properties, and title thereto was conveyed to it by said receivers, under the direction of said court. Said defendant Kansas, Oklahoma & Gulf Railway Company has been made a party defendant hereto, and it hereby adopts the answer heretofore filed by the defendant, J. W. Colclazier, as its answer.

"Since the purchase of the properties of the Missouri, Oklahoma & Gulf Railway Company, the said defendant, J. W. Colclazier has attorned to the said Kansas, Oklahoma & Gulf Railway Company as his lessor, under and by virtue of the lease hereinabove referred to, executed by the Missouri, Oklahoma & Gulf Railway Company.

"(11) It is further agreed that the reasonable rental value of the property in controversy in this action, from the period beginning six years prior to the institution of this action up to this time is $50 per month."

This agreed statement of facts, with the exhibits thereto, constitutes the evidence upon which this case was tried. The plaintiffs in error claim the land in controversy in this suit under and by virtue of certain condemnation proceedings instituted by the Missouri, Oklahoma & Gulf Railway Company in the latter part of the year 1903 under the Enid and Anadarko Act of Congress, relating to railroads procuring right of way through Indian lands. The railroad company seeking the condemnation of the land in question in this suit and other lands had served the notice and plats provided for in said Act of Congress, on the Secre-

tary of the Interior, the Indian Agent, and the Principal Chief of the Creek Nation, and on January 16, 1905. proof of publication was filed in said condemnation proceedings and the referees were appointed by the United States Court at Muskogee to appraise the lands sought to be condemned, and on May 19, 1905, said referees filed their report in said court, and on the 3rd day of January, 1906, the court made an order confirming and approving the report of the referees and it is admitted that said railroad company went into possession of the lands condemned, which is the subject-matter of this litigation, and built depots, main line of tracks, side tracks, etc., and have been in continuous possession of the same to the present time. It appears that these lots, which are the subject-matter of this litigation, were originally listed to James J. Clarke and Missouri A. Davis, and that they paid 25 per cent. of the purchase price on said lots, but made no further payments, but were in possession of the lots during the time of said condemnation proceedings, and quitclaimed to the railroad company all of their right in said lots. Sometime subsequent to said condemnation proceedings the Secretary of the Interior canceled, or attempted to do so, Clarke's and Davis' purchase, and on November 1, 1910, said lots were sold to Nathaniel N. Simpson. The defendant herein, who was plaintiff below, contends that the condemnation proceedings were void, for the reason that no notice was served on the Creek Nation. The plaintiffs in error, who were defendants below, answer this contention with the assertion that said condemnation proceedings were regular in all respects, and that the Creek Nation had all the service required of it by the service of plat and description of land sought to be condemned, and contend further that the plaintiff cannot attack the validity of said condemnation proceedings collaterally. On the trial in the court below, the court found for the plaintiff, Simpson, and entered judgment for possession of said lands and for damages for use and occupation in the sum of $4,462.50. A motion for a new trial was overruled, exceptions saved, and the case has been duly appealed to this court.

William C. Alley, John E. M. Taylor, and Fred R. Davis, for plaintiffs in error.

J. H. Lincoln, W. W. Witten, and W. W. Wood, for defendant in error.

Opinion by MAXEY, C. We have examined the agreed statement of facts upon which this case was tried, and also the briefs presented by the respective counsel, and have examined the record, especially those parts that were attached to the agreed statement of facts. The briefs narrow the question for us to decide down to two or three propositions. The first is that defendant in error contends that the condemnation proceedings were void for want of notice. To this proposition we cannot agree. Under the Act of Congress, approved February 28, 1902, commonly known as the Enid and Anadarko Act, the prerequisites to condemnation must be complied with. The railroad seeking to condemn land for right of way purposes must file a plat of the proposed right of way with the Secretary of the Interior, the Principal Chief of the Creek Nation, the United States Indian Agency. This all seems to have been done, but it is contended that that is not sufficient notice to the Creek Nation. We do not see what the Creek Nation has to do with this lawsuit. It seems that at the time these condemnation proceedings were filed, that this land in controversy had been sold as a part of the townsite of Henryetta to James J. Clarke and Missouri A. Davis, and that they were in possession of it and had due notice of the condemnation proceedings, and the railroad company settled with them for the damages. They held the legal title at that time, and if the Creek Nation had any interest in it, it was merely an equitable lien for the balance due on the lots. It appears that the Creek Nation, long after the condemnation proceedings were had and the railroad had been built and a mill and elevator had been built, and were operating when the Secretary of the Interior canceled the purchase of Clarke and Davis, in 1910, sold the land again to the plaintiff in this suit, Simpson. The person making the sale, let it be the Creek Nation, Secretary of the Interior, or any one else, had notice that the lots had been condemned as a part of the right of way of the Missouri, Oklahoma & Gulf Railway, and that they had built a railroad, station, switches and other buildings necessary for the operation of the road. They had leased or granted a permit to Ross to erect a mill and elevator on the right of way, and he had erected same and had sold the mill and elevator, together with his permit, with the consent of the railroad, to Colclazier, and they were operating the mill and elevator at the time Simpson got his deed. It is not shown that the Creek Nation ever asserted any right to this land after it was condemned, and it is not shown that Simpson asserted any right to it after he bought it until after the mill and elevator burned down, and then this suit was commenced. We do not think the Creek Nation was entitled to any notice, and if it was, the plai

of the right of way that the railroad was seeking to condemn was sufficient notice to it. The Secretary of the Interior was exercising a supervisory control over the land of the Indians at that time, and the Secretary of the Interior had notice of the intended condemnation of these lots, and the Indian Agency for the Five Civilized Tribes, which is another branch of the Department of the Interior, also had notice, and the Principal Chief of the Tribes had notice. They all knew that the railroad had been built and the mill and elevator had been built on the right of way, and none of them questioned the title of the railroad for over ten years after Simpson's deed was made. It is clear to our minds that this deed to Simpson was made under a misapprehension of the facts. At that time, if the Secretary of the Interior had taken pains to inform himself, he would have found that these lots had been condemned as a right of way of the Missouri, Oklahoma & Gulf Railway several years prior to the time he attempted to convey it to Simpson, the plaintiff. We think all the notice that was required was given to all the parties.

Another question is, Will ejectment lie against a railway company, which has entered into possession of land taken for right-of-way purposes and has constructed its line and engaged in the operation of same. This court in the very recent case of Peckham et al. v. Atchison, T. & S. F. Ry. Co. et al., 88 Okla. 174, 212 Pac. 427, held, quoting the first paragraph of the syllabus:

"Where a public service corporation, vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by and permits such corporation to go on and spend large sums of money in constructing its railroad, or telegraph wires, or pipe lines, or mains, or plants, or other necessary fixtures, the owner is estopped from maintaining either trespass or ejectment, and will be regarded as having acquiesced therein, and is restricted to a suit for damages for the value of the land, on the theory that the public has acquired an interest in the appropriation. Under such circumstances an appropriation will be treated as equivalent to title by condemnation."

This case is very much in point, and we think decides the question of the right of plaintiff in this case to maintain an action in ejectment adversely to the condemnation. This case is so full of the citation of authorities from our own court, and from other courts that we think it settles that question, and we might close this opinion here, but there are some other questions raised in the brief that we think the parties are entitled to have passed upon.

It is the contention of the plaintiffs in error, defendants below, that defendant in error, plaintiff below, is attempting to have the condemnation proceedings declared void in a collateral attack on the judgment in the condemnation proceedings. The first question is, Whether this is a collateral attack. We do not think there can be any doubt about that question. A collateral attack on a judicial proceeding is an attack to void, defeat or evade it, or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it. Continental Gin Co. v. DeBord, 34 Okla. 66, 123 Pac. 159; Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184. So it will be seen that the attack on the condemnation proceedings is essentially a collateral attack. It will not suffice to show that there were errors or irregularities in the judgment of that court, such as might have been corrected on review by an appellate court or by timely proceedings instituted in the court rendering the same; but it is incumbent upon him to show that said court was without power or jurisdiction to render the judgment. The validity of the statute under which the proceedings were had, and the jurisdiction of the court to entertain those proceedings, not being questioned in order to attack the judgment of the court in this collateral proceeding, it must appear that the judgment itself is void upon its face. There is no such contention herein and no other contention that in our judgment brings the case within the rule that it can be collaterally attacked. It is contended by defendant in error, plaintiff below, that the lots in controversy were not condemned because pending the condemnation proceedings, the railroad made an amicable settlement with Davis and Clarke. We do not exactly get the force of this proposition. It is a matter of common knowledge that railroad companies, in procuring a right of way, always endeavor to make amicable settlements with the parties owning the land through which they desire to pass. The railroad company had a perfect right to make an amicable settlement with any or all of the parties through whose land they passed. The fact that condemnation proceedings were in progress at the time this amicable settlement was made did not in any way affect its validity. The referees in their report to the court mentioned the fact that in the Clarke and Davis matter, the railroad company had made an amicable settlement with the owners and exhibited

the deed from Clarke and Davis. There was nothing secret about it. It was made a matter of public record, and the report of the referees has been notice to everybody since, and Mr. Simpson, the plaintiff below, had notice of it when he attempted to buy these lots from the Secretary of the Interior.

Another proposition urged by defendant in error is, that ejectment will lie for land occupied by a railroad company where the plaintiff has the legal title and the defendant is wrongfully in possession at the time of the institution of the action. There may be isolated cases where an ejectment will lie against the railroad company for land it is occupying, but we are of the opinion that this case does not come within that rule. Counsel for defendant in error realizes that the case of Peckham et al. v. Atchison. T. & S. F. Ry. Co. et al., 88 Okla. 174, 212 Pac. 427, is against their contention because in that case the plaintiffs sought to recover possession of a strip of land located in the city of Blackwell, and the plaintiff in that case, as in this, deraigned his title from the United States Government by instruments attached to his petition. A demurrer was sustained to the petition. Counsel say with reference to this case, "with the very greatest respect for the opinion of this court, we submit that in our opinion the decision of the court in that case was unsound." We are satisfied with that opinion and think that the opinion is sound. The reasoning in the opinion and the authorities cited are very convincing to us, and we shall have to follow that opinion, notwithstanding learned counsel think it unsound. We are inclined to think that if the plaintiff below, or the Creek Nation, had any title, they are estopped by their long acquiescence to the occupancy by the railroad company and other defendants. This view is not in conflict with the case of Selsor-Badley v. Reed, 97 Okla. 204, 223 Pac. 651.

We do not understand that the defendants below rest their claim entirely on their deeds from Davis and Clarke. There was a condemnation proceeding in progress, and they were parties to it, and taking their deeds from them was just as effective as if the referees had assessed the value of the property and the railroad had paid it into court for their benefit. No such facts appear in the Selsor-Badley-Reed Case, supra. We do not think that the plaintiff. Simpson, acquired any title to these lots by virtue of his deed from the Secretary of the Interior and the Creek Nation. The land had already been condemned and it was not subject to sale at the time Simpson bought it, and Simpson is charged with the knowl-

edge of that fact. The case of Kindred v. Union Pac. Ry. Co., 225 U. S. 582, is a case dealing with lands that formerly belonged to the Delaware Indians. Quoting from the last paragraph of the syllabus, the court said:

"Where a railroad company enters upon the land of another and constructs a railroad thereover, under a statute entitling it to do so on condition that compensation be made to the owner, and the latter permits the construction and operation of the railroad without compliance with that condition, a subsequent vendee of the owner takes the land subject to the burden of the right of way, and the right to exact payment therefor from the railroad company belongs to the owner at the time of entry and construction."

See, also, U. S. v. Denver & Rio Grande Ry. Co., 150 U. S. 1. The conduct of Simpson after he got his so-called deed on November 1, 1910, is not such as to appeal to this court. He knew when he got the deed that the defendants were in possession and operating the railroad and the mill and elevator, and he makes no claim to the land for ten years. We think his conduct amounts to an estoppel. In the case of St. L. & S. F. Ry. Co. et al. v. Mann, 79 Okla. 160, 192 Pac. 231, in the first paragraph of the syllabus the court said:

"Where a public service corporation, vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by, and permits such corporation to go on and spend large sums of money in constructing its railroad, or telegraph wires, or pipe lines, or mains, or plants, or other necessary fixtures, the owner is estopped from maintaining either trespass or ejectment, and will be regarded as having acquiesced therein, and is restricted to a suit for damages for the value of the land, on the theory that the public has acquired an interest in the appropriation. Under such circumstances, an appropriation will be treated as equivalent to title by condemnation."

So that if Simpson has any cause of action, it is for damages for the value of land at the time the railroad took possession of it. We cannot understand just how the trial court arrived at the conclusion that Simpson, the plaintiff, was entitled to judgment for the rental value of the land during the time the defendants occupied it up to a certain date, and entered judgment for the damages against the estate of Colclazier and no judgment against the railroad company. The fact is that we cannot understand by what process of reasoning the trial

court reached the conclusion that he did. The case of Great Northern Railway Company v. City of Minneapolis (Minn.) 161 N. W. 231, is a case very much in point, and is a case against the contention of defendant in error. We could cite a great many of the cases bearing on this subject that we have examined, but we think enough has been said to show that in our judgment, the judgment of the trial court should be reversed and remanded, with direction to set aside the judgment heretofore rendered and enter judgment for the defendant.

By the Court: It is so ordered.