**Richard R. ALLEN, an Individual, Appellant,**

v.

**TRANSOK PIPE LINE COMPANY, a corporation, Appellee.**

**No. 47921.**

Supreme Court of Oklahoma.

April 20, 1976.

Rehearing Denied July 20, 1976.

---

11. *Dixon v. Outboard Marine Corp.,* 481 P.2d 151, 155 (Okl.1970).

Lytle, Soule & Emery, by Robert J. Emery and Peter T. Van Dyke, Oklahoma City, for appellant.

McKeever, Glasser, McKeever & Conrad, by Douglas C. McKeever, Enid, for appellee.

BARNES, Justice.

This appeal involves an action by a landowner seeking punitive and other non-land damages for trespass against a pipeline company that took his property without resorting to condemnation proceedings.

Appellant is not seeking recovery for the value of the land taken; he is seeking recovery for injuries caused by Appellee's tortious conduct. In fact, Appellant's prayer for relief includes a request that the Appellee be directed to remove the pipelines and compensate him for the further injury caused thereby.

The events forming the basis for these proceedings are briefly summarized. Appellant, Richard R. Allen, is the owner of certain real property in Major County, Oklahoma. It is alleged in Appellant's amended petition that on or about October 1, 1972, the Appellee constructed a pipeline, which Appellee still maintains and uses, across a portion of Appellant's property without prior consent of Appellant. Appellee constructed its pipeline upon the subject land without resorting to condemnation proceedings, and Appellant has never been compensated for his loss. Appellant further alleges that from time to time

agents of Appellee enter upon the land to repair and inspect the line, causing additional injury to the surface of the land.

Appellant now brings this action sounding in tort seeking to recover punitive and other non-land damages for Appellee's wrongful invasion of his property rights and for injury resulting from the emotional strain caused by Appellee's wrongful and wanton conduct.

Appellee filed a motion to strike and demurrer to Appellant's amended petition. Pursuant thereto the District Court of Major County entered its order finding that the Appellant's sole and exclusive remedy for the taking of his lands was a reverse condemnation action, that Appellant's petition seeking relief in tort for personal injury and punitive damages was inconsistent with an action in reverse condemnation, and that Appellant's cause of action in tort should be dismissed and Appellee's demurrer sustained. From such adverse judgment Appellant appeals.

The points of law urged as error by Appellant on appeal are as follows: (1) To hold that reverse condemnation provides the Appellant's exclusive remedy under the facts alleged would render 66 O.S.1971, § 57, unconstitutional as in conflict with Article II, Section 24, of the Oklahoma Constitution; (2) the relief afforded by reverse condemnation is inadequate and incomplete and is not Appellant's exclusive remedy; and (3) to hold that reverse condemnation provides the exclusive remedy would be violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Appellee's position is that the Trial Judge was correct in recognizing that under the laws of the State of Oklahoma Appellant's sole and exclusive remedy for the taking of his land by the Appellee is a reverse condemnation action.

This Court will first address itself to Appellant's proposition that to hold reverse condemnation provides Appellant's exclusive remedy would render 66 O.S.1971, §

57, unconstitutional, as in conflict with Article II, Section 24, of the Oklahoma Constitution. That section provides in pertinent part:

> "*Private property shall not be taken or damaged for public use without just compensation.* Such compensation . . . shall be ascertained by a board of commissioners . . . in such manner as may be prescribed by law.
>
> \* \* \* \* \* \*
>
> "Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested." (Emphasis ours)

The meaning of this constitutional provision is clear: A person's property shall not be taken, his right to possession disturbed, nor his title divested unless, and until, payment of the constitutionally mandated compensation. See *Edwards v. Thrash*, 26 Okl. 472, 109 P. 832 (1910).

Title 66 O.S.1971, § 57, provides for the assessment of damages when land is taken without condemnation:

> ". . . Provided, that in case any corporation or municipality authorized to exercise the right of eminent domain shall have taken and occupied, for purposes for which it might have resorted to condemnation proceedings, as provided in this article, any land, without having purchased or condemned the same, the damage thereby inflicted upon the owner of such land shall be determined in the manner provided in this article for condemnation proceedings."

Recovery of damages under 66 O.S.1971, § 57, is provided for in 66 O.S., § 53, upon the application or petition of either party, and states:

> "The commissioners shall be sworn to perform their duties impartially and justly; and they shall inspect said real property and consider the injury which said owner may sustain by reason of the condemnation and they shall assess the damages which said owner will sustain by such appropriation of his land, irrespective of any benefits from any improvements proposed; and they shall forthwith make report in writing to the clerk of the court, setting forth the quantity, boundaries, and value of the property taken, and amount of injury done to the property, either directly or indirectly, which they assess to the owner; which report must be filed and recorded by the clerk. A certified copy of the report may be transmitted to the county clerk of the county where the land lies, to be by him filed and recorded (without further acknowledgment or proof) in the manner and with like force and effect as is provided for the recording of deeds. *And if said corporation shall, at any time before it enters upon said real property for the purpose of constructing said road, pay to said clerk for the use of said owner the sum so assessed and reported to him as aforesaid, it shall thereby be authorized to construct and maintain its road over and across said premises.*" (Emphasis ours)

■ Before an entity having eminent domain authority can appropriate private land to its use, all of the steps legally requisite to using the land must have been taken. See *Watkins v. Board of Commissioners of Stephens County*, 70 Okl. 305, 174 P. 523 (1918), where the Court said at page 525:

> "Before, however, the board of county commissioners acting for the county can exercise the right to appropriate private land for any purpose, *all* of the steps legally prerequisite to using the land for such purpose must have been taken. *If there is a statute on the subject, the same must be followed, unless in conflict with the higher authority of the Constitution.* It is within the province of the Legislature to prescribe the procedure to be followed by the board of county commissioners in locating and es-

tablishing a public road, *but private land cannot be taken for such purpose contrary to constitutional requirements.* * * *" (Emphasis ours)

■ Statutes purporting to make provision for eminent domain must conform to the restrictions placed on the exercise of such power by Article II, Section 24, Oklahoma Constitution. This was done in 66 O.S., § 53, supra.

The first syllabus by the Court in *Stinchcomb v. Oklahoma City,* 81 Okl. 250, 198 P. 508 (1921), states:

> "The taking of private property for public use is the exercise of sovereign power, and is controlled in this state by the provisions of section 24, art. 2, of the Bill of Rights of our Constitution, and these provisions must be construed strictly in favor of the owner and against the condemning party, and until the compensation has been paid to the owner, his property cannot be disturbed, nor his proprietary rights divested. *Hence there can be no legal taking under the Constitution until the compensation, as fixed by the commissioners, is either paid to the owner of the property or into court for him.*" (Emphasis ours)

This Court has recognized that the inference to be drawn from the provisions requiring compensation prior to entry is *"that any entrance upon the property by the one condemning before payment of the award would be a trespass." Stinchcomb,* supra, at page 510.

To hold otherwise would give this Court's stamp of approval to Appellee's position that it could take whatever land it desired for pipeline purposes, and regardless of its failure or refusal to follow the procedural steps required by law, the only sanction permitted, regardless of its contempt for the rights of the landowner, is that it might ultimately have to pay the fair market value of the land taken—assuming the landowner undertakes the burden of prosecuting a reverse condemnation action.

■ We further hold that any person vested with the power of eminent domain who goes into possession under the power of eminent domain without condemnation proceedings has no title. (Article II, Section 24, Oklahoma Constitution.) To the extent that any prior decision of this Court, including *Rogers v. Oklahoma City,* supra, determined in such instances that the person going into possession had title in the nature of title by condemnation, such was error and the same is hereby overruled.

■ We do not think the legislative intent in enacting the reverse condemnation statute, 66 O.S.1971, § 57, was to permit what the Oklahoma Constitution prohibits. We believe that it was intended to provide a remedy in those cases where the remedy provided by reverse condemnation is adequate, to-wit: Cases where the landowner is merely seeking compensatory damages for the land taken or encumbered, as where the entry is unknowing, is under a mistaken belief of authority, or where the effect of taking other property has in effect taken adjoining property.

■ To hold that it was intended to provide an exclusive remedy, as contended by the Appellee, would indeed make it violative of the Constitution and thus invalid. We, therefore, hold that the relief afforded by the reverse condemnation statute, 66 O.S.1971, § 57, is not Appellant's exclusive remedy.

Thus far, we have determined the existence of two types of condemnation proceedings in Oklahoma: (1) Regular condemnation, where the landowner is compensated pursuant to Article II, Section 24, Oklahoma Constitution, prior to taking of his land for public use; (2) reverse condemnation, where the landowner brings suit pursuant to 66 O.S.1971, § 57, merely seeking condemnation damages for the land taken or encumbered.

But we have not yet answered the question presented in the instant case: What remedies are available to a landowner for

*willful* and *wanton* entry by a condemnor who fails to resort to regular condemnation proceedings?

In *Oklahoma Gas & Electric Co. v. Miller Bros. 101 Ranch Trust,* 173 Okl. 101, 46 P.2d 570 (1935), this Court said in the second syllabus:

"2. The remedy for an injury to the land, which injury is not a necessary incident to the construction and operation of the public service for which the land is taken, but is due to willful or negligent construction or operation, is not such remedy as is given by the statutes relating to eminent domain."

This Court further said at page 571:

"* * * The remedy for an injury to the land which is not a necessary incident to the construction and operation of the public service for which the land is taken but is due to willful or negligent construction or operation, is not such remedy as is given by the statutes relating to eminent domain. *The landowner in such case has a separate and distinct cause of action, such as trespass, and is not entitled to have such injuries considered in awarding damages under condemnation proceedings."* (Emphasis ours)

While the *Miller Brothers* case, supra, does not address itself to the issue of punitive damages, we think it is some authority for a separate trespass action, apart from regular or reverse condemnation proceedings, and supports the view that a reverse condemnation action can be said to provide the exclusive remedy only in those cases where the remedy provided (i.e., reverse condemnation) is adequate, to-wit: Cases where the landowner is merely seeking compensatory damages for the land taken or encumbered.

We are further persuaded by cases from other jurisdictions, having statutory and constitutional provisions similar to Oklahoma's, which have permitted plaintiffs to proceed in tort when unlawful entries are made under circumstances similar to those herein.

In *Ossman v. Mountain States Telephone & Telegraph Company,* 520 P.2d 738 (Colo.1974), the defendant telephone company inadvertently crossed plaintiff's land with its telephone cable without resorting to condemnation proceedings.[1] Being unable to reach an amicable settlement, plaintiff brought suit against defendant seeking damages for trespass and exemplary damages. Defendant asserted that plaintiff was limited to the measure of damages that he could recover in an inverse condemnation proceeding.[2] Plaintiff contended he had the right to elect at the outset whether to proceed in trespass or inverse condemnation.

Plaintiff prevailed in the Trial Court and was awarded damages and exemplary damages. The Colorado Court of Appeals reversed, saying: "We conclude that such an authority, if pursuing a public purpose, (Colo.Const. Art. II, § 15) cannot be a trespasser." See 32 Colo.App. 230, 511 P.2d 517 (1973).

In reversing the Colorado Court of Appeals, the Colorado Supreme Court said at page 740:

"* * * The Court of Appeals, in reversing the judgment of the trial court, held that an entity which has the statutory power of eminent domain cannot be held liable for a nonintentional trespass

---

1. Article II, Section 15, Colorado Constitution, provides in pertinent part:

"Private property shall not be taken or damaged, for public or private use, without just compensation. Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be pre-scribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested; * * *."

2. An inverse condemnation action is based on the "takings" clause of Article II, Section 15, of the Colorado Constitution.

where the trespass occurred while such entity was pursing a public purpose. We disagree and hold that a landowner has a right to sue in trespass even though the trespasser may have the statutory power of eminent domain with respect to the land on which the trespass occurs. * * *"

Continuing at page 741 the Court added:

"The threshold question is whether Mountain Bell may be liable for trespass under the particular circumstances in this case. The Court of Appeals held that the trial court should have treated Mountain Bell's counterclaim for inverse condemnation as a petition in eminent domain and proceeded to a determination of whether the taking was necessary and proper. If the trial court found that the taking was a necessary and proper exercise of the eminent domain power, the trespass action would not lie. *Ossman* concedes that Mountain Bell could condemn his property, and, in fact, he repeatedly requested that they do just that. He *maintains that he may elect at the outset whether to proceed in trespass or inverse condemnation. We agree that Ossman had the right to elect to sue in trespass under the circumstances here. We find no sound reason why a landowner should be limited to an inverse condemnation remedy where a trespasser refuses to promptly initiate eminent domain proceedings.* * * * (Cases cited.)" (Emphasis ours)

In *Hagenson v. United Telephone Company,* 164 N.W.2d 853 (Iowa 1969), plaintiff brought an action against defendant telephone company seeking damages for willful trespass and injunctive relief, alleg-

ing defendant willfully trespassed and installed underground cables on his land.[3] Defendant took the position that plaintiff's only remedy is to compel institution of condemnation proceedings.[4]

*Hagenson,* supra, is similar to the case at bar in that defendants in both cases entered upon the land with intent to appropriate, absent permission, and without having pursued the condemnation procedures prescribed by law. The Iowa Supreme Court said in that case:

" * * * However, when a public utility, ignoring applicable statutes and the constitution, enters upon and appropriates the land or rights in property of a private citizen, absent an agreement with the owner to so do, or without acting to secure a determination of damages as by law provided, it may be held accountable for willful trespass, regardless of its motive, need or purpose for so doing.

"*In such case the aggrieved property owner may maintain a common law action for damages. Also he may, in a proper case, have both actual and punitive damages.* On the other hand, as aforesaid, he can elect to waive the tort and by mandamus compel the taker to institute proceedings in eminent domain. * * * (Cases cited.)" (Emphasis ours)

█ It reasonably follows that in the case at bar, a public utility invested by law with the power to exercise the right of eminent domain is not thereby clothed with an immunity not possessed by others who trespass upon the property or rights of private citizens, and must answer for its wrongs the same as any other trespasser.

3. Article I, Section 18, Constitution of the State of Iowa:
"Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantages that may result to said owner on account of the improvement for which it is taken."

4. Section 488.4 of the Iowa Statutes provides:
"If the person over whose lands such telegraph or telephone line passes claims more damages therefor than the proprietor of such line is willing to pay, the amount thereof may be determined in the same manner as provided for taking private property for works of internal improvement."

**382**

We, therefore, hold Appellant has a separate and distinct cause of action in trespass for damages and for punitive damages. However, in those cases in which the landowner elects to sue in tort, the defendant pipeline company can cross-petition for condemnation, and the two causes of action can be tried in the same case.

In other cases where the landowner thinks the trespasser could have exercised the power of eminent domain, he can recover in one lawsuit all damages sustained as a result of the trespasser's willful and wanton conduct, as well as damages in reverse condemnation, by setting forth in the same suit two separate causes of action; the first based on trespass to recover his damages and for punitive damages, and, second, a separate cause of action under the reverse condemnation statute.

We believe that to hold otherwise would bring about the legalization of willful and wanton trespass and would preclude the full tort recovery available to landowners not forced to proceed under the condemnation statutes.

Finally, we re-affirm the applicable law in situations where the landowner sits idly by allowing one vested with the power of eminent domain to erect improvements on the land without first resorting to condemnation proceedings.

In the case of *Peckham et al. v. Atchison, T. & S. F. Ry. Co. et al.,* 88 Okl. 174, 212 P. 427 (1923), we said in the first syllabus:

"Where a public service corporation, vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by and permits such corporation to go on and spend large sums of money in constructing its railroad, or telegraph wires, or pipe lines, or mains, or plants, or other necessary fixtures, the owner is estopped from maintaining either tres-

pass or ejectment, and will be regarded as having acquiesced therein, \* \* \*."

Other authorities supporting this rule are: *Dickinson v. Brown-Crummer Inv. Co.,* 137 F.2d 615 (10 Cor. 1943); *Vinson v. Oklahoma City,* 179 Okl. 590, 66 P.2d 933 (1937), and *Colclazier v. Simpson,* 103 Okl. 232, 229 P. 1054 (1935).

More recently, in *Delhi Gas Pipeline Corp. v. Swanson,* 520 P.2d 670 (Okl. 1974), this Court held landowners, whose exceptions to the commissioners' report dealing with necessity of the taking were overruled and not appealed, had waived any objection to the necessity of the taking which actually occurred, even if the taking was greater than that approved by the commissioners, and could not raise the issue of necessity for taking in an action brought in trespass.

We, therefore, hold that where a landowner stands by without objecting and permits one vested with the power of eminent domain to erect improvements on his land, without having complied with statutory and constitutional provisions for condemnation, the landowner will be estopped from maintaining a suit in trespass. In such cases the landowner will be regarded as having acquiesced therein and will be limited to a suit for damages recoverable in reverse condemnation.

In view of our disposition of the case, no review of Appellant's final contention is deemed necessary. The preponderance of authority in Oklahoma and, as we view it, the better reasoning support the contentions of Appellant.

The judgment of the Trial Court is reversed and the cause remanded for trial not inconsistent with the views expressed herein.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, LAVENDER, SIMMS and DOOLIN, JJ., concur.

BERRY, J., dissents.