## THRASH *v.* STATE.

Opinion delivered December 20, 1920.

1. WITNESSES—OBJECTION TO MENTAL INCOMPETENCY.—If a party knows before trial that a witness is mentally incompetent to be a witness, the objection must be made before the witness testifies; but if the objection appears at the trial, it must be interposed as soon as known.

2. WITNESSES—IMPEACHMENT.—Testimony that a witness is subject to insane delusions, or that his mind and memory have become impaired by disease or other causes, is admissible to affect his credibilty.

3. CRIMINAL LAW—SELF-SERVING DECLARATION.—In a prosecution for assault to kill, it was not error to exclude the testimony of defendant's brother that a few days before the shooting defendant asked witness to go to the person afterward assaulted and try to settle the trouble; such testimony not being admissible as part of *res gestae*, but being a self-serving declaration.

Appeal from Pike Circuit Court; *Jas. S. Steel,* Judge; affirmed.

*W. S. Coblentz,* for appellant.

1. The court erred in refusing to let Hassie Self express her opinion of the condition of her mother's mind after having testified as to what she had said and done upon which she based her opinion. 11 R. C. L. 601; 97 Ark. 457.

2. The court erred in excluding from the jury the evidence of Buster Thrash and the evidence of Bud Ray. Defendant was convicted of assault with intent to kill, and the intent is a material element in this crime. Both of their statements showed that it was the purpose of defendant to avoid trouble. The statements made by defendant were part of the *res gestae* and show that defendant had no malice against the prosecuting witness. 12 Ark. 782; 98 *Id.* 430; 43 *Id.* 99; 33 *Id.* 557.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellee.

1. The trial court laid down the correct rule for impeaching, on account of insanity, the testimony of a

witness. A proper foundation must be laid, and this was not done. 61 Ark. 421. Furthermore, no objection was made on the ground of mental incompetency at the time she testified. 103 Ark. 197. .

2. There was no error in excluding the testimony of Buster Thrash and Ed. Ray. The record is conclusive against appellant's contentions and it was no part of the *res gestate* and was immaterial and of no force and effect at all, and was not prejudicial.

HART, J. John Thrash was indicted, tried and convicted of the crime of assault with the intent to kill, charged to have been committed by shooting John Conway, and his punishment was fixed by the jury at one year in the State penitentiary.

From the judgment of conviction the defendant has duly prosecuted an appeal to this court.

John Conway was a witness for the State. According to his testimony, John Thrash shot him on the 8th day of January, 1920, just after dark in front of the house of Edgar Ray, in Pike County, Arkansas. Conway was on his way home, riding a mule, and when he got in front of Ray's house the defendant called to him from the door of the house, which was probably twenty-five feet from the gate. The defendant came out of the house and picked up his gun near the gate and came out into the road where Conway was sitting on his mule. He asked Conway to go a little ways in the dark with him. Conway refused, and the defendant began to curse and abuse him. Finally the defendant raised his gun and shot Conway. Conway was unarmed and did not do anything at the time to cause the defendant to shoot him. The testimony of Conway was corroborated in all essential respects by that of Edgar Ray in front of whose house the shooting occurred.

The defendant was a witness for himself. According to his testimony he and Conway had had trouble about a road. Conway had cursed him about the matter. The defendant had tried to get one or more persons to talk

with Conway for the purpose of adjusting their differences. He went to Edgar Ray's house on the evening he shot Conway for the purpose of getting him to talk with Conway about the matter and try to get him to settle their differences amicably. Conway came by Ray's house and began the difficulty with the defendant. Conway tried to shoot the defendant, and the defendant shot Conway in his necessary self-defense.

Other evidence was adduced by the defendant tending to corroborate his testimony and to show that Conway's reputation for truth and morality was bad.

The evidence adduced in behalf of the State was sufficient to warrant the jury in convicting the defendant. No error is assigned on this account by the defendant. A reversal of the judgment is asked on the ground that the court erred in refusing certain testimony which the defendant offered to introduce before the jury.

The mother of the defendant was a witness for the State and testified that she heard the defendant say that he would kill John Conway, and that he had a pistol at the time he made the threat. Conway had married a sister of the defendant.

It is insisted that the court erred in not allowing another sister of the defendant to testify with regard to the mental condition of her mother. No objection was made to Mrs. Thrash testifying, on the ground that she was mentally incompetent to be a witness. If a party knows before the trial that a witness is incompetent on account of his mental condition, the objection must be made before the witness has given any testimony, and if the objection appears at the trial it must be interposed as soon as it becomes known. *Mell* v. *State*, 133 Ark. 197. It is admissible, however, in order to affect the credibility of the witness, to prove that he is subject to insane delusions or that his mind and memory have become impaired by disease or other causes. *Mell* v. *State, supra.*

As above stated, no objection was made to Mrs. Thrash testifying in the case. Her daughter was per-

mitted to testify about the delusions of her mother. She testified that her mother would do anything that John Conway wanted her to do, and that Conway had turned their mother against every one of the children except his wife. She was also permitted to testify that her mother would require the doors to be fastened at night, saying that if they were not fastened the bogie man would catch her; that her mother would make her look under the bed to be sure that there was not anything there; that her mother would say that the bogie man would get her before morning; that her mother was afraid to stay by herself in the daytime; that her mother was always against the other children when she stayed at Conway's house, and that when she left there and stayed with the other children awhile she would get in a good humor with them. Hence it will be seen that the court permitted the witness to testify as to all the matters that came under her knowledge with reference to the delusions of her mother or the influence of Conway over her.

It is also contended that the court erred in not permitting a brother of the defendant to testify that a few days before the shooting the defendant came to him seemingly in great trouble, and asked him to go to Conway and try and settle the trouble between them. There was no error in refusing this testimony. It was not a part of the *res gestae* as contended by counsel for the defendant, but on the contrary was a self-serving declaration.

Counsel for the defendant relies upon the case of *Carr* v. *State,* 43 Ark. 99, to sustain his contention that the testimony was admissible as a part of the *res gestae.* In that case Wyatt came to his death at the hands of a mob of which Carr was the leader. The persons composing the mob had had a meeting at a church on the night before the killing, and the court said that evidence of what was done and said at the church was admissible, providing any connection was shown between the proceedings there and the subsequent homicide.

·In the instant case the excluded testimony was the narrative of a past transaction. It was not connected in any way with the difficulty at the time Conway was shot by the defendant. The declarations must stand in immediate causal relation to the act itself and become a part. either of the action immediately preceding it, or of the action which it immediately precedes in order to become a part of the *res gestae.* McCoy v. State, 46 Ark. 141; Plunkett v. State, 72 Ark. 409; Littlejohn v. State, 76 Ark. 481, and Mallory v. State, 141 Ark. 496, 217 ·S. W. 482.

Again, it is contended that the court erred in refusing to permit Edgar Ray to testify that when the defendant came to his house on the evening in question he told Ray that a boy had told him that he had better change his boarding place, that something bad was going to happen, and asked Ray if he would not talk to Conway about the difficulty. What the defendant said to Ray about what the boy had told him would have been hearsay only and clearly inadmissible. The fact that the defendant asked Ray to talk with Conway about their difficulty was not material. Ray did not talk with Conway, and the fact that the defendant had asked him to do so a few minutes before he shot Conway could amount to no more than a self-serving declaration.

No other assignments of error are urged for a reversal of the judgment, and it will therefore be affirmed.