## NOLAN v. MATHIS, Adm'r.

No. 18687. Opinion Filed Oct. 23, 1928.

Rehearing Denied Dec. 24, 1928.

W. H. C. Taylor, J. T. Johnson, and Walter Marlin, for plaintiff in error.

Drennan & Drennan and Sam P. Ridings, for defendant in error.

BENNETT, C This was a civil action in district court of Grant county, Okla., by Michael Nolan, plaintiff, against Harry W. Mathis, administrator of the estate of John Nolan, deceased, for recovery of the value of one-half the crop raised upon two tracts of land in said county, alleged to have been cultivated and harvested by plaintiff under an oral lease with John Nolan, deceased, the owner of the real estate. There was an intervention in the cause by A. K. Johnson, who sued for his charges for threshing the grain crop, the subject of this action, but this phase of the case we think becomes unimportant.

There was a verdict in favor of defendant administrator as against plaintiff, and a judgment in favor of intervener and against defendant for the amount claimed as threshing charges, and upon these verdicts judg-

ment was rendered accordingly. This appeal is prosecuted by Michael Nolan alone. The parties will be referred to in the order in which they appeared in trial court.

John Nolan, a bachelor, aged about 54 years, died intestate in Lamont, Grant county, May 19, 1924, leaving as his only heirs at law three brothers, Michael, Patrick and Thomas, and four sisters. All the sisters except Amelia were married. Said heirs resided in the community in which John Nolan died.

John Nolan, decedent, was the owner of two tracts of land near Lamont, Okla., known as the Blaisdell and Mabry farms, altogether containing 250 or 300 acres. Said decedent was stricken with paralysis early in 1922, received a second stroke about the last of 1923, and a final stroke in the spring of 1924, from which he died. For a month or two after his first stroke he was well nigh helpless, but improved so as to give his business at least some attention thereafter. The latter part of 1923, his condition became more serious, and he required considerable attention which was given him by his brothers and unmarried sister. During his sickness, Michael Nolan seemed to have given him more attention than the others. John Nolan went to Marlin and Mineral Wells, Tex., early in 1924, in search of health, and, growing worse, he was attended for a few days there by these brothers and the single sister. During 1923, and the early part of 1924, Michael Nolan took a sort of supervisory control over John's business, in a measure looked after and controlled his farms, had the live stock on the farms cared for, and had the use of his bank account and checked upon the same in the name, however, of John Nolan  This account was not consistently large, but the amount on hand subject to check ranged generally from a few dollars to a few thousand dollars. In addition Michael gave the sick man such personal attention as was required by his condition aided by other kinspeople, and also by nurses hired for the purpose. It seems that both the tracts of land referred to were improved with houses and barns, and were fairly well supplied with farming equipment, including a great number of mules, a few horses, and considerable farm machinery and implements. There was no substantial evidence in the case of any unfriendliness between John and his brothers and sisters. The estate approximated $50,000 or $60,000 in value, and consisted of four farms, a grain elevator, and about $8,000 or $10,000 of personal property.

Plaintiff's petition sets out that these two tracts of land belonged to John Nolan, who, in the autumn of 1923, orally leased same to plaintiff to be put in grain, upon the agreement that the proceeds of the crop should be equally divided between them, and that plaintiff seeded the farms to wheat, oats, barley and perhaps some alfalfa, and that in the following spring and early summer, he cut these grain crops and stacked them in shocks upon the land, and that before the same were threshed, Harry W. Mathis, administrator of John Nolan, deceased, entered upon the premises, took charge of the crops, had them threshed and sold, and that the proceeds of same amounted to $3,859.40, of which plaintiff claimed a one-half interest. There was no controversy as to the amount of the proceeds of the crops; the administrator admitted the taking and sale of the crops, and set out the amount of the proceeds, but claimed the same as the administrator of John Nolan, deceased.

The crucial point in this lawsuit was as to whether or not this wheat crop was planted and harvested by plaintiff, under an oral lease with and as a tenant of John Nolan, deceased, or whether this grain crop was planted and cultivated upon these lands by the owner thereof, John Nolan, in his own right. It was contended by plaintiff that he went upon the premises as tenant of John Nolan under an arrangement similar to the one which had theretofore existed with reference to the same, or similar lands, between John and his brother-in-law, Bert Donaldson, and that Michael bore the entire expense of seeding, cultivating, and harvesting the crops, and without cost or expense to John Nolan. It was contended on the part of the defendant, however, that John furnished the seed, the farming implements and machinery, the live stock, and the land for the growing of the crops, and that he directly or indirectly paid for all the labor connected therewith; and this issue as to whom the crop belonged to was submitted to and was passed upon by the jury under instructions to which there was not a single exception by either party, and in deference to the finding of the jury, the court rendered judgment against the plaintiff, and he brings the case here for review.

In order that we may clearly understand the plaintiff's contentions, we shall set out the grounds of the alleged errors contained in the motion for new trial. They are as follows: (1) That the verdict is contrary to the evidence; (2) that the verdict is contrary to law; (3) that the verdict is not sustained by sufficient evidence; and (4) that the jury was prejudiced by the admission

of irrelevant, incompetent and immaterial evidence over plaintiff's objection.

(1) Our answer to the first contention is that the sufficiency of the evidence was not challenged in any way in the trial court. There was no demurrer to the evidence; there was no motion to direct a verdict, and under the plain holdings of this court, that question is not now before us.

"Where a party submits his case to the jury without demurring to the evidence of his opponent, or asking a peremptory or instructed verdict thereon, or otherwise legally attacking its sufficiency, the question whether there is any evidence reasonably tending to support the finding is not presented for review by a motion for new trial alleging insufficiency of the evidence." Oklahoma State Bank of Ochelata v. Ward, 127 Okla. 45, 259 Pac. 644.

See, also, Peters v. Wallace, 127 Okla. 182, 260 Pac. 42; Kern v. Yantis, 120 Okla. 196, 250 Pac. 1005; Brown v. McNair, 125 Okla. 144, 256 Pac. 903; Constantin Refining Co. v. Thwing, 72 Okla. 16, 178 Pac. 111; Norman v. Lambert, 64 Okla. 238, 167 Pac. 213; Muskogee Elec. Traction Co. v. Reed, 35 Okla. 834, 130 Pac. 157; Reed v. Scott, 50 Okla. 757, 151 Pac. 484; Simpson v. Mauldin, 61 Okla. 92, 160 Pac. 481; Oaks v. Samples, 57 Okla. 660, 157 Pac. 739.

We might say, however, that while we are not called upon, under this state of the record, to examine carefully this evidence, out of abundant caution, we have read every word of the evidence in this case, and we are constrained to hold that there is sufficient evidence to warrant the finding of the jury and the judgment of the court thereon.

In a law case tried to a jury, the verdict of a jury and judgment thereon will not be disturbed on appeal where there is any evidence in the record reasonably tending to support the findings of the jury. Spring v. Major, 126 Okla. 150, 259 Pac. 125; Perry v. Myers, 127 Okla. 27, 259 Pac. 556; J. B. Colt Co. v. Koehn, 128 Okla. 39, 260 Pac. 1060; Carter v. Binder, 128 Okla. 45, 261 Pac. 139; Ruby v. Barrett, 130 Okla. 145, 265 Pac. 1048.

(2) That the verdict is contrary to law. It will be observed that this ground for new trial is simply the latter part of the sixth ground for new trial set out under section 572, C. O. S. 1921, the whole ground being:

"Sixth. That the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law."

In the case of Constantin Refining Co. v. Thwing Instrument Co., 72 Okla. 16, 178

Pac. 111, in the second paragraph of the syllabus the court says:

"A verdict is contrary to law when it is rendered in disobedience or disregard of the court's instructions."

Judge Sharp, rendering the opinion, says:

"Propositions numbered, respectively, 3 and 4, urge that the verdict of the jury is contrary to law and the evidence, and may be considered together. Each urge the insufficiency of the evidence to sustain the verdict. A very similar question presented in the third proposition was before the court in Norman v. Lambert, 64 Okla. 238, 167 Pac. 213, in which we held there was no substantial distinction between an assignment based upon the allegation that the verdict was not sustained by sufficient evidence, and where, because of the insufficiency of the evidence, the verdict was contrary to law; that, in such circumstances, the latter furnished no additional ground for a new trial; neither did it strengthen the ground that the verdict was not sustained by sufficient evidence. There as here the assignment did not deal with the court's instruction, but instead with abstract propositions of law, which it claimed determined the rights of the parties under the evidence. The court adopted the view that the phrase 'contrary to law,' as there used, meant 'contrary to the instructions,' and that in order to obtain a new trial upon that ground it must be made to appear that there was an instruction which was disregarded; that it is not enough that a principle of law not embodied in an instruction was disregarded by the jury."

To the same effect is Norman v. Lambert, 64 Okla. 238, 167 Pac. 213, wherein it is said by the court:

"A number of authorities hold that the phrase 'contrary to law,' as used in such statutes, means 'contrary to the instructions,' and that, to obtain a new trial upon that ground, it must be made to appear that there was an instruction which was disregarded; that it is not enough that a principle of law, not embodied in an instruction, was disregarded by the jury. Hayne's New Trial and Appeal, section 99; Valerius v. Richard, 57 Minn. 443, 59 N. W. 534; Emerson v. Santa Clara, 40 Cal. 543."

Judge Sharp, in Norman v Lambert, supra, refers to C., R. I. & P. Ry. Co. v. Groves, 20 Okla. 101, 93 Pac. 755, as indicating perhaps a different rule.

Plaintiff points out nothing in his brief under this head which would constitute reversible error.

(3) The third ground, that the verdict is not sustained by sufficient evidence, has been passed upon by us in the consideration of the first ground, supra.

The last ground is that the jury was prejudiced by the admission of irrelevant, incompetent, and immaterial evidence, etc. It will be observed here that **there is no exception taken or urged that the plaintiff was not allowed to put in evidence all the evidence which was available to him.** He makes no contention under his motion for new trial that he was prevented from developing his case. His sole contention is that prejudicial evidence was introduced against him, and in this behalf he says that Bert Donaldson, a husband of an heir of the estate, was incompetent. The part of the evidence objected to is as follows:

"Q. Now, what was your arrangement with John Nolan with reference to planting that? Mr. Kruse: Wait a minute. We object to this as irrelevant, incompetent and immaterial. I think he is disqualified. Mr. Falkenburg: He is claiming an interest in the wheat. A. I don't claim no interest on the Blaisdell place, only my part of the seed that I put out there. The Court: Overruled."

The plaintiff does not set out the answer of the witness by which he claims to have been prejudiced, and we might, on this account, pass up the question, but we will examine it. The witness answered, in substance, that John Nolan told witness to break up about 12 to 15 acres and seed it to wheat to be used for pasture, and that decedent and witness used it for pasturage for their cows. Three acres was on the Mabry farm and about 12 or 15 on the Blaisdell farm. The admission of this evidence at this juncture could not be reversible error for several reasons: (1) The only ground of disqualification intimated in this objection is that witness had an interest in the wheat. Section 585, C. O. S. 1921, precludes this contention. (2) If plaintiff relies upon the statement that the evidence was incompetent, irrelevant, and immaterial, that would not present the question of incompetency of the witness under sections 588 or 589, C. O. S. 1921. Nolan v. Mathis, 134 Okla. 79, 272 Pac. 868. (3) Nor would witness seem to be incompetent under section 588, supra, for his testimony was not adverse to the estate; neither he nor his wife were parties, and the only result might be to open the door for contrary evidence from the other side. Alexander v. Bobier, 65 Okla. 301, 166 Pac. 716. (4) The testimony of this witness covers over 30 pages. The above objection made after he had testified in detail about his connection with the sowing of this grain, his authority therefor from John Nolan, the fact that he did not know who authorized or paid for the sowing the balance of the grain, is the only reference to any incompetency of this witness. No motion was made to strike the testimony already given or thereafter given, nor was any objection made to the testimony of one G. O Moore, who was subject to the same objection urged against Donaldson.

"It is now well settled that an objection to competency may be raised at any time during the examination or cross-examination of a witness, subject to the qualification that, if raised after he is sworn in chief, it should be made as soon as discovered." Jones' Commentaries on Evidence (2nd Ed.) vol. 5, sec. 2087, p. 3904. Citing Thrash v. State, 146 Ark. 547, 226 S. W. 130; Brooks v. Crosby, 22 Cal. 42; People v. Sawhill, 299 Ill. 393, 132 N. E. 477; and cases from Kentucky, Maine, Maryland, Massachusetts, Missouri, New Jersey, South Carolina, and Texas.

The same authority on the same page says:

"It is still the rule that if the incompetency is then known, the objection should be made before the examination in chief." (Citing Donelson v. Taylor, 8 Pick. [Mass.] 390; Howser v. Commonwealth, 51 Pa. 32, and other cases.) If, after examination in chief has begun, it is not made upon discovery, it is waived." Citing Drake v. Foster, 28 Ala. 649; Lewis v, Morse. 20 Conn. 211; Kingsbury v. Buchanan, 11 Iowa, 387; Stuart v. Lake, 33 Me. 87; Groshon v. Thomas, 20 Md. 234; Heely v. Barnes, 4 Denio (N. Y.) 73.

The reason for this rule is that any objection which should strike down the testimony should be made known promptly in order that the party entitled to object may not speculate upon the evidence and remain quiet if it be favorable and complain later if it should be adverse to him; upon the further ground, too, that this is required by fairness to the other side, who might make proof by witnesses against whom no objection could be urged. This doctrine is followed in Oklahoma: Brownell v. Moorehead, 65 Okla. 218, 165 Pac. 408; Ardmore Milling Co. v. Robinson, 29 Okla. 79. 116 Pac. 191. In addition to these legal objections to plaintiff's contention, we will say that after examining all of this evidence, we are convinced that the admission of the evidence objected to by plaintiff did not prejudicially affect the plaintiff in so far as the verdict of the jury is concerned, and we think he has been deprived of no substantial right by the action of the court.

The following additional propositions are submitted by plaintiff: That the court erred as follows: (1) In holding that the crops in controversy, severed from the realty, passed to the administrator. (2) In holding that the rent of realty passed to the adminis-

trator. (3) In ordering the payment to the administrator of the proceeds of the crops grown by plaintiff. He argues that these raised but one point, and he devotes pages of his brief to authorities from distant states on this question, when the matter has been set at rest by our statutes, sections 1160, 1198, and 1218, C. O. S. 1921. See In re De Bernal's Estate (Cal.) 131 Pac. 375, and Washington v. Black (Cal.) 23 Pac. 300. We really did not know that this question was doubtful in this state. (4) That the court erred in refusing to set aside the verdict of the jury for insufficiency of the evidence. We have discussed this proposition. (5) In holding that John Nolan could not alienate growing crops orally. Pages of authorities are cited on this contention, whereas the point was never raised in nor passed upon by the trial court, and it was entirely unnecessary for it to do so. (5) In holding the administrator was entitled to crops growing on the land, the title to which was in controversy, etc. This point was not involved in the suit since the plaintiff claimed to be tenant of deceased owner. (7) In failing to instruct the jury to find for plaintiff. No request for such an instructed verdict was made. (8) In rendering judgment for costs against plaintiff. This is equally without merit.

We have given this case careful attention, and find no reversible error pointed out in the brief of plaintiff and none is apparent on the face of the record. For these reasons, the judgment of the trial court is affirmed.

LEACH, REID, FOSTER, and HERR, Commissioners, concur.

By the Court: It is so ordered.