Kleier *v.* State.

Crim. 3904.

Opinion delivered February 11, 1935.

*W. T. Pate, Jr., Robt. J. Brown, Jr.,* and *U. C. May,* for appellant.

*Walter L. Pope,* Attorney General, *Leon B. Catlett,* Assistant, and *Carl E. Bailey,* Attorney General, and *Guy Williams,* Assistant, for appellee.

Humphreys, J. Appellant was indicted by the grand jury of Logan County, Southern District, with Bill Bailey, Rogers Trotter and Herman Mitchell, for murder in the first degree for shooting J. D. Fowler in an attempt to rob him on the 10th day of June, 1933. He was tried separately, convicted, and adjudged to serve a sentence for life in the State penitentiary, from which is this appeal.

Three assignments of error are insisted upon for a reversal of the judgment as follows:

First, that the court should have instructed a verdict of acquittal because the evidence was insufficient to connect him with the murder;

Second, that the court committed reversible error in permitting Jimmy O'Neal to testify in the case on the ground that he was insane;

Third, because the court refused to give his requested instruction No. 10.

After a careful reading of the testimony, we are of opinion that it was sufficient to warrant the court in submitting the issue to the jury whether appellant fired the shot that resulted in the death of J. D. Fowler. Fowler was a very old man residing in the suburbs of Booneville. Miss Etta Allen had been his housekeeper for years. A little after dusk on June 10, 1933, she was making preparations to wash Fowler's feet, who was sitting in a chair on a screened-in porch. She testified that she was standing near him getting water for that purpose, when a light flashed and a man unknown to her jumped through the screen onto the porch and hollered, "Throw up your hands;" that Mr. Fowler raised his chair, and the man fired two shots at him, one entering his body and killing him, whereupon his assailant fled. Appellant was arrested the following Tuesday at Rogers Trotter's home, and on Thursday was identified by his size and voice by Miss Etta Allen as the man who did the shooting. Other proof introduced by the State tended to establish the following facts: A man was seen shortly after the shooting passing through a nearby field, who was using a flashlight. A man about appellant's size, wearing overalls rolled up to his knees, was seen walking down the road from the direction of the Fowler home toward the home of Rogers Trotter, where appellant was living, about eleven o'clock on the night of the murder. After appellant was arrested at the Trotter home on Tuesday morning, the officers were directed to go to the barn, where they found a pair of overalls of size to fit appellant, wet and rolled up to the knees. After arresting appellant, the officers found a flashlight under the pillow on the bed where he slept, which he admitted was his; and a pistol in a bundle of laundry in his room with two chambers containing cartridges that had recently been fired. The pistol was a 32-20 calibre pistol. The balls that were fired at Fowler were balls from 32-20 calibre cartridges. An expert on ballistics testified that the ball that entered Fowler's body had been fired out of a cartridge in the particular pistol found in appellant's room and introduced in the trial of the cause. On the afternoon of the killing, appellant was seen in Boone-

ville with Rogers Trotter. At the time, he was wearing a mustache. A merchant in Booneville testified that on that afternoon appellant had tried to buy steel jacket 32-20 cartridges from him, and in response to a question of whether he was going to shoot fish, he said it was not fish this time. Jimmy O'Neal testified that on Wednesday before the killing, appellant told him he had a job to do about seventeen miles from Booth; that he saw appellant and Rogers Trotter about 4 A. M. the next morning after the murder coming home; that appellant had on overalls which were wet and rolled up to his knees; that he took off the overalls in the barn at the Trotter place and changed to a striped pair of pants and a white shirt; that he came into the house and about 6:30 that morning shaved off his mustache which he had been wearing and partly shaved off his eyebrows and cut off his hair in a rough way. After Miss Etta Allen had identified appellant by his size and voice, he (appellant) stated to the officer who had him in charge that he guessed he was an accessory before the fact because he had come into the State with him (meaning Trotter).

Appellant denied that he had anything to do with the murder and attempted to establish an alibi.

As stated above, the evidence introduced by the State, if believed by the jury, was sufficient to sustain the verdict.

The insistence that the court should have excluded the testimony of Jimmy O'Neal on the ground that he is insane is without merit. His testimony was in the form of a deposition which had been given in another case, and was read to the jury by agreement of the parties without objection or exception. A motion was made after it had been read to exclude it on the ground of his insanity, but it came too late. Appellant knew at the time he agreed that it might be read that he had been adjudged insane by an Oklahoma court, and had the certified judgment of his insanity in his possession. The reading of the deposition by consent constituted an irrevocable waiver of his incompetency to testify if incompetent to do so. 28 R. C. L., 450, § 37; *Thrash* v. *State,* 146 Ark. 547, 226 S. W. 130. Jimmy O'Neal's testimony

334

reflects that at the time he testified he did so in a sane and sensible manner, so it was within the discretion of the trial court to determine the competency if able to give a fairly intelligent and reasonable narrative of the matters about which he testified, although it appeared that at one time he had been in the insane asylum. Underhill's Criminal Ev., 3d Ed., p. 452. The court did not err in overruling the motion to exclude O'Neal's testimony.

Instruction No. 10 requested by appellant and refused by the trial court is as follows:

"If you find from the evidence, beyond a reasonable doubt, that this defendant is guilty of being an accessory before the fact, then you must find him not guilty under this indictment, as an accessory before the fact can not be convicted under an indictment charging him as a principal, which this indictment does."

It was proper to refuse the instruction as appellant did not advance the fact that he was an accessory before the fact as a defense to the murder charge. He defended on the ground that he had nothing to do with the murder, and in aid of that theory set up an alibi. The instruction was abstract. The piece of testimony that he stated to the officer that he "guessed he was guilty of accessory before the fact as he came into the State with Rogers Trotter," was not sufficient to warrant the instruction for he did not advance it as a defense to the charge. It was properly admitted as a circumstance tending to show guilt of the crime charged, and was not a defense in the case.

No error appearing, the judgment is affirmed.