**BUFFINGTON, Ex'r, v. HUGHES et al.**

No. 28548.    Jan. 10, 1939.

W. H. Kornegay, for plaintiff in error.

Rollie C. Clark, for defendants in error.

DANNER, J.  The plaintiff in error, plaintiff below, appeals from a judgment in favor of the defendants in error, defendants below, entered pursuant to a jury verdict, in an action commenced by the plaintiff to recover a balance alleged to be due on a promissory note executed by the defendants to plaintiff's testator.

The note is dated July 1, 1930, in the original sum of $1,500 and shows credits as follows:

"April 25, 1933, $500 of the principal paid on this note.  A. J. Russell.

"Interest paid up to July 2, 1934, $5.00, A. J. Russell

"Interest paid up to July 1-1935, $50.00 A. J. Russell

"Interest paid July 1, 1936, $50.00 A. J. Russell."

The execution of the note, and the payments thereon, is admitted, leaving for determination the sole question of payment asserted by the defendants in their answer.

The defendant C. B. Hughes testified that in 1932 he paid to A. J. Russell, in currency, the balance due on the note in the sum of $1,025.  There was introduced in evidence a receipt for this amount dated July 18, 1932, signed A. J. Russell, the receipt reciting "paid on Hughes and Lester note ten hundred and twenty-five dollars to date."  Another receipt of the same date signed A. J. Russell contains the following recitation: "received in full interest on Hughes & Lester note up to date."

That Russell's signature on the receipts are in his handwriting is not seriously disputed by the plaintiff.  Tilda J. Anderson, a witness for the defendants, identified the receipts and testified that Russell signed them in her presence on or about July 18, 1932.  The testimony of the witness is uncontradicted.

The plaintiff contends that error was committed in the trial of the cause, prejudicial to the rights of the plaintiff, in permitting the defendant C. B. Hughes to testify concerning transactions of the witness with

A. J. Russell, deceased, in violation of section 271, O. S. 1931, 12 Okla. St. Ann. sec. 384. The trouble with this contention is that the objectionable testimony, if any, was elicited from the witness by the plaintiff on cross-examination. The witness was offered by the defendants and on direct examination, without objection as to his competency as a witness, testified only that the note had been paid. On cross-examination the witness was examined as to the manner and method of payment. On numerous occasions when counsel for the defendants and the court attempted to limit the course of the cross-examination, plaintiff's counsel insisted on the whole story being told. The rule followed in this state is: that if the incompetency of the witness is known, the objection should be made before the examination in chief. Nolan v. Mathis, Adm'r, 134 Okla. 66, 272 P. 874; James v. Wingate, 179 Okla. 224, 65 P.2d 452; Sweat v. Skaggs, 138 Okla. 141, 280 P. 591; Miller v. Nanny, 91 Okla. 150, 216 P. 662; Selsor-Bradley v. Reed, 97 Okla. 204, 223 P. 651; Hartsell v. Davis, 175 Okla. 446, 53 P.2d 261; In re Dearborn's Estate, 151 Okla. 58, 2 P.2d 93. On the face of the record the authorities presented by the plaintiff in support of his contention on the point raised are inapplicable.

The plaintiff challenges the testimony offered by the defendants—especially on the issues of payment—as uncanny, irrational, incompetent, and unreasonable. We admit that the record presents a state of facts unusual and inharmonious with ordinary business transactions. We are impressed, however, with the fact that both Russell and the defendant Hughes—the moving parties in the episode—were unusual characters. Both were old men apparently well fixed financially. They were secretive in their business affairs and suspicious of the soundness of financial institutions. Additionally, each appears to have had implicit confidence in the honesty and integrity of the other.

Hughes testified that Russell became suspicious of the financial stability of banking institutions and desired to withdraw his money from the banks and place it elsewhere. On cross-examination, the witness testified as follows:

"Q. Well, how did you happen to have your daughter (co-defendant Flora Lester) remit this interest for a thousand dollars on this note? A. Well, he (Russell) come in after the Farmers State Bank broke, and said he wanted to get his money out of the bank, and I says, 'I don't need it,' and he says 'maybe your daughter might need a little there at the store, maybe she can

use some of it' * * * The Court (interrupting) 'I don't think that is competent.' Judge Kornegay: 'Let him go, your Honor, and find out the truth if we can. Go ahead.' A. I said, 'I believe she can use about fifteen hundred,' and he says, 'You can have it all if you will sign it; I want to get it out of the bank.' Well, I said, 'That is all they will give us at the present time, paying interest on it'; so he furnished the fifteen hundred and we signed the note and we paid it back in two payments to him, and when I gave him this big money, the thousand, I said 'Now, don't let my daughter know about this; I want to keep them down a little on spending, I want them to put on the brake a little.' 'What little interest she pays I will give it back,' he says. And instead of helping her that way I bought her a new Dodge automobile: It didn't cripple her any, and didn't hurt me any, and I don't think my daughter knowed anything about those payments until this come up; didn't aim for her to know. I have always paid my bills in cash, and don't write no checks. * * * Mr. Russell came up to my store excited about something, * * * he said, 'If anybody asks you about our business, tell him you didn't owe me nothing'."

Concerning the payment, the witness, on cross-examination, testified as follows:

"Q. I say, when did you pay it? A. Well, I paid it in 1932. Q. And how? A. Paid it in money. Q. What kind of money? A. Greenbacks. like I always keep. * * * Q. Is that the only proof that you have got of it now, just your word? A. They said they had got the note misplaced, and I said, 'If you will sign a little receipt, I will pay you anyway,' and I have never failed yet, and I am 72 years old."

On re-direct examination, the witness testified as follows:

"Q. State what amount of currency and greenbacks you kept at times? A. Well, I have had as high as a hundred thousand dollars buried in the ground, and me and my wife would have to dig it up and dry it off every six months, we would hang it up in sacks and dry it to keep it from rotting. I was afraid of the banks, and if you want to know all about it. * * * The Court (interrupting) Mr. Witness, just answer his question."

The plaintiff complains of the action of the trial court in limiting the cross-examination of the defendant Hughes—especially on the transaction relating to the $5,000 note. Our examination of the record convinces us that the plaintiff probably elicited more from the witness on all questions than the issues justified. Apparently neither the court nor counsel were able to control the testimony of the witness once a question was propounded. While it appears that the

witness is extremely deaf, the record does not reveal any impediment in his speech. Evidently he was willing to tell the whole story regardless of the competency or relevancy of the evidence. On material issues his testimony is corroborated by the testimony of other witnesses.

While some phases of the transaction is "shrouded in mystery and surrounded by doubt," we are unable to say that the defendants' evidence is so palpably unreasonable as to be unworthy of belief. In any event the issues presented a question of fact for the consideration of the jury under proper instructions of the court. The instructions fairly presented the law and are free from error. We conclude that there is evidence in the record reasonably tending to support the rendered judgment. Reviere v. Payne, Adm'r, 166 Okla. 150, 26 P.2d 734; James v. Wingate, supra; Nolan v. Mathis, Adm'r, supra.

The judgment is affirmed.

WELCH, V. C. J., and OSBORN, GIBSON, and HURST, JJ., concur.